IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| ADRIAN TOSADO, | ) | Civil Action No. 7:20-cv-00287 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | By: Michael F. Urbanski |
| GILBERT, et al., | ) | Chief United States District Judge |
| Defendants. | ) | |

## MEMORANDUM OPINION

Adrian Tosado, a federal inmate proceeding pro se, filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). His amended complaint asserts claims against five defendants, all of whom worked at the United States Penitentiary in Lee County ("USP Lee") at the time of the alleged events. Pending before the court is Tosado's motion for preliminary injunction. ECF No. 2. For the reasons discussed herein, the motion will be denied.

## I.    BACKGROUND

Tosado's original complaint alleged that defendants violated his Eighth Amendment rights when they failed to protect him from two attacks by two different inmates. Because his original complaint failed to identify specific actions by the defendants, however, the court directed Tosado to file an amended complaint, which he did. The court has since directed the Clerk to attempt service of process of the amended complaint on the named defendants, and no response is yet due by them.

In his amended complaint, Tosado alleges that he completed a term of disciplinary

segregation in the special housing unit ("SHU").[1]  He then refused to go to general population because he was concerned about potential conflicts with any members of two jail gangs.[2] When he found out he was to be assigned to a cell with an MS-13 gang member (although still in the SHU, see Spearen Decl. ¶ 21), he told defendants Gilbert and Parson that he could not be put in the cell with that inmate.  Gilbert threatened to "fuck [him] up" if Tosado did not go to the cell, and so Tosado eventually agreed to move into the cell.  Within an hour of his arrival, he was stabbed in his head, cheek, and bicep by his new cellmate, and he had a torn ligament in his thumb.  Tosado received stiches, a cast, and staples in his head, and now suffers from post-traumatic stress disorder and severe headaches that disrupt his sleep.  Am. Compl. at 1–2, ECF No. 20.

The second assault occurred on April 7, 2020, when defendant Hornsberry told Tosado that he had to be moved to a different cell in the SHU, again, after Tosado again refused to return to general population.  Tosado asked if his new cellmate was an active gang member, but Hornsberry did not know.  Later, as they were walking to the new cell, Hornsberry informed Tosado that he thought the new cellmate was a G-27 gang member.  Tosado responded that he could not share a cell with him if he was an "active" gang member. Hornsberry then threatened Tosado, saying he would "fuck [him] up" if he did not go in the cell now.  Tosado states that his new cellmate attacked him immediately, while he was still

---

[1]  At USP Lee, as at other Bureau of Prisons ("BOP") facilities, the SHU "is a housing unit where inmates are securely separated from the general inmate population [and] may be housed alone or with other inmates." Destiny Spearen Decl. ¶ 3, ECF No. 9-1.

[2]  Tosado's filings are inconsistent in identifying the gangs from which he believes he needs to be separated.  Compare, e.g., ECF No. 20 at 1 with ECF No. 8 at 1.  Further, some of his statements seem to suggest he believes he should not be housed with any gang members.

handcuffed, because the other inmate knew that Tosado was "checked in from other inmates." Defendants Roberts and Hornsberry were right there and yelled at the two inmates to stop fighting, but the new cellmate continued fighting until pepper spray was used.  Id. at 3.

Immediately afterward, as Tosado was being escorted from the cell, Hornsberry pushed down on his neck forcefully, eventually took him to the ground, and proceeded to kick him in the ribs, even though Tosado was not being combative.  Id.   Tosado's amended complaint also alleges, in conclusory fashion in a single sentence, that all the defendants "threw away [his] mail and would not allow [him] to file administrative remed[ies]."  Id. at 4.

Tosado does not dispute the evidence presented non-party Warden Streeval that he did not have a Central Inmate Monitoring ("CIM") assignment of separation from either inmate, prior to the respective assaults.  Instead, Tosado argues that defendants knew he was at risk of attack because he told them as he was being transferred that he could not be housed with any active gang members.  They nonetheless threatened him to get him to go to his assigned cell.  Tosado also does not dispute that he now has "keep separate" orders from both of the inmates who assaulted him.

The Clerk docketed Tosado's original complaint as both a complaint and a motion for preliminary injunction, because that request for relief appears in the title of the document. The only injunctive relief sought in the document, however, is an injunction "prohibiting . . . retaliation," apparently by USP Lee officers.  See ECF No. 2 at 2.  In a later-filed document, Tosado asks for an order of "protective custody" from two specific prison gangs, which he names in his filing.  ECF No. 8.  He states that he fears for his life and asks for an order transferring him to a facility that has no members of those gangs.  Id.

3

The court ordered the warden of USP Lee, non-party Streeval, to respond to the motion for preliminary injunction. In his response, Warden Streeval assumes that Tosado is asking for an injunction precluding him from having a cellmate that is a known "gang member." Warden's Resp. 1, ECF. No. 9. The response includes an affidavit from Destiny Spearen, which discusses generally the purposes and use of special housing units within the Bureau of Prisons, including at USP Lee. Her affidavit also provides information concerning Tosado's history of filing of administrative remedies and his housing and cell assignment history. See generally, ECF No. 9-1. Warden Streeval argues that Tosado cannot make any of the four required showings for obtaining preliminary injunctive relief.[3]

Tosado has filed a reply, ECF No. 13, in which he makes three primary points. First, he argues the merits of his claim, presumably in response to Streeval's contention that he is not likely to succeed on the merits. Second, Tosado claims that he is seeking a preliminary injunction "prohibiting retaliation" by SHU staff, in light of the prior threats toward him and his allegation that "[b]eatings in ambulatory restraints were routine at that time." ECF No. 13 at 3.[4] Third, he notes that his amended complaint and its attachment specifically allege that he was prevented from exhausting administrative remedies because unit members threw away the forms he submitted, thereby rendering the BOP's remedies "unavailable."

## II.    DISCUSSION

Preliminary injunctive relief is an "extraordinary" remedy that courts should grant only

---

[3] Warden Streeval's response did not address any of the allegations in ECF No. 8, which has a viewing restriction limited to case participants only. Also, the response was filed before Tosado provided additional details regarding the background facts and relief sought in both his reply and his amended complaint.

[4] This allegation does not appear in his complaint or amended complaint. Apparently, Tosado offers this as "proof" that he has a genuine fear of retaliation.

"sparingly." Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 816 (4th Cir. 1991). The party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20, 22 (2008); League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 249 (4th Cir. 2014). The remedy may be granted only on a "clear showing" of entitlement to relief. Winter, 555 U.S. at 22. Critically, the movant must satisfy all four requirements to obtain preliminary injunctive relief. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 345–46 (4th Cir. 2009), vacated on other grounds, 559 U.S. 1089 (2010).

Moreover, courts must be particularly cautious in granting any injunctive relief that interferes with prison officials' management of prisons. See Owens v. FCI Beckley, No. 5:12-3620, 2013 WL 623089, at *5 (S.D.W. Va. Jan. 31, 2013) ("[P]reliminary injunctive relief involving the management of prisons should be granted only under exceptional and compelling circumstances). This caution is especially warranted in the context of housing assignments for prisoners, which generally are made on an individual basis by prison administrators who consider a range of factors. Spearen Decl. ¶¶ 9–14 (noting the individualized basis of housing decisions, especially for SHU inmates); see, e.g., Cline v. Harmon, No. 5:11-CV-00870, 2012 WL 692974, at *5 (S.D.W. Va. Mar. 2, 2012) (denying preliminary injunction in Bivens action seeking transfer to a different prison and noting that 18 U.S.C. § 3621 vests sole discretion in the BOP to determine the place of a prisoner's imprisonment).

Applying the foregoing standards to Tosado's motion, the court concludes that he is not entitled to relief. As an initial matter, Tosado cannot satisfy the first Winter factor on the current record. Although the court is not conclusively deciding the issue of exhaustion at this time, at the very least Tosado has not shown a likelihood of success on the merits, given the undisputed evidence that he failed to exhaust administrative remedies. The Prison Litigation Reform Act requires a prisoner-plaintiff to exhaust his available administrative remedies prior be bring suit. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). District courts, moreover, may not "excuse a failure to exhaust." Ross v. Blake, 136 S. Ct. 1850, 1856 (2016).

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the inmate. See, e.g., Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) (unpublished).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). "[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006).

Tosado contends that the BOP's administrative remedies were not "available" to him,

6

and he claims that unidentified officers on unidentified dates failed to forward for processing forms he submitted.  But numerous courts within the Fourth Circuit and elsewhere have held that "unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fail to create a genuine issue of material fact sufficient to withstand summary judgment."  Pickens v. Lewis, No. 1:15-CV-275-FDW, 2017 WL 3277121, at *4 (W.D.N.C. Aug. 1, 2017).  Tosado has not yet presented any details constituting more than "unsubstantiated and conclusory assertions" of unavailability.  See id. Thus, based on the current record, he has failed to show a likelihood of success on the merits.

Tosado's motion also must be denied because he cannot satisfy the second Winter factor.  As to this factor, the court addresses separately the two distinct aspects of relief Tosado seeks.

Tosado's first request is to be transferred to a different facility that has no members of the two gangs he identifies.  As already noted, though, ordering the transfer of a prisoner is a drastic remedy in light of the discretion of the BOP to determine housing assignments.  18 U.S.C. § 3621; see also Cline, 2012 WL 692974, at *5 (relying on § 3621 to denying preliminary injunction in Bivens action seeking transfer to a different prison).  The facts here do not warrant such relief.

As to the specific inmates who attacked Tosado, the sworn testimony before the court—which Tosado does not dispute—is that there are now orders in place to keep him separate from both of those individuals.  Thus, he cannot show that he faces any likelihood of attack from either of them, let alone harm that is "actual and imminent."  Direx Israel, Ltd.,

7

952 F.2d at 812.

Similarly, Tosado has not provided any specific information as to why he, in particular, is at risk from any of the particular gangs he identifies, or as to all "active gang members," which would include a sizeable segment of the federal prison population. He seems instead to be making the argument that any inmate who has been housed in protective custody at any point cannot be housed with active gang members. That is not BOP policy, however. Spearen Decl. ¶¶ 12–14. And the scant evidence before the court does not support a conclusion that Tosado—apparently a gang member himself, see ECF No. 9 at 9—must be housed separately from all gang members or risk an imminent attack.

In short, Tosado simply has not presented facts that he cannot safely be housed in some setting or cell at USP Lee. Accordingly, his request for a transfer is also denied.

Tosado's second request, which seeks or an order prohibiting SHU officers from "retaliating" against him, fails for like reasons: he has not shown that he faces actual and imminent harm without such an order. Although he contends that certain of the defendants threatened him to get him to go along with both of the cell assignments, he has not shown a reasonable likelihood that, without the court's intervention, the same harm is likely to occur again, such that the harm is "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd., 952 F.2d at 812; see also Williams v. Maryland, No. CIV.A. DKC 09-0879, 2011 WL 3422825, at *9 (D. Md. Aug. 3, 2011) (denying prisoner's motion for preliminary injunction where plaintiff had only speculative and "unsubstantiated fears" of retaliation from corrections officers).

### III.    CONCLUSION

For the foregoing reasons, Tosado's motion for preliminary injunction, ECF No. 2, will be **DENIED**.  An appropriate order will be entered.

Entered:  November 4, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.11.04 08:50:53
-05'00'

Michael F. Urbanski
Chief United States District Judge